## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **WALID ELKHATIB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | FILED: APRIL 1, 2008 |
| | ) | 08CV1931 J. N. |
| **Vs.** | ) **NO.** | JUDGE DER-YEGHIAYAN |
| | ) | MAG. JUDGE ASHMAN |
| **DUNKIN DONUTS, INC., a** | ) | |
| **Delaware Corporation and** | ) | |
| **DUNKIN BRANDS, INC., a** | ) | |
| **Delaware Corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### VERIFIED COMPLAINT FOR
### INJUNCTIVE RELIEF AND CIVIL RIGHTS VIOLATION

**NOW COMES** the Plaintiff, WALID ELKHATIB, by and
through his attorney, ROBERT HABIB and complaining of the
Defendants, DUNKIN DONUTS, INC., a Delaware Corporation and
DUNKIN BRANDS, INC., a Delaware Corporation, for an
injunction based on the Defendants' racially discriminatory
conduct in denying the renewal of the Plaintiff's
franchise, and in support thereof states as follows:

### JURISDICTION

1.  The District Court has both federal Question
Jurisdiction, pursuant to Title 28 U.S.C. Section 1331 as
this action involves violations of Title 42, U.S.C. Section
1981 and 1982.  The Court has diversity jurisdiction,
pursuant to Title 28 U.S.C. Section 1332, as the Plaintiff
is a citizen of Illinois, while the Defendants are Delaware

corporations, with principal places of business in Massachusetts.

## VENUE

2.  The Northern District of Illinois is the proper venue, as all actions complained of occurred, or are occurring, in Cook County, Illinois.

## PARTIES

3.  The Plaintiff, WALID ELKHATIB ("ELKHATIB") is a U.S. Citizen and a member of the Arab race.

4.  The Defendant, DUNKIN DONUTS, INC. ("DUNKIN DONUTS") is a Delaware Corporation, and franchiser with its principal place of business in Massachusetts.

5.  The Defendant, DUNKIN BRANDS, INC. ("DUNKIN BRANDS"), is a holding company for DUNKIN DONUTS, and is also based in Massachusetts.

6.  ELKHATIB has been a DUNKIN DONUTS franchisee continuously since 1979.

7.  The Plaintiff's franchise is located at 1901 South Mannheim, Westchester, Illinois.  The franchise agreement was entered into in 1998, and will expire on April 14, 2008, if it is not renewed.

8.  ELKHATIB, as an Arab, is forbidden from dealing in, buying, or selling pork products, because of his race's traditions and religious practices. Since 1979, Plaintiff

has never allowed the sale of pork products at his stores.
During this time, he has spent hundreds of thousands of
dollars building, developing, and maintaining his stores.

9.  DUNKIN DONUTS' principal business has always been
its sale of coffee and donuts. While it has, since 1984,
featured the sale of some pork products in its breakfast
items, it has never insisted on Plaintiff being required to
sell these items, as a condition for being a franchisee.

10.  On August 14, 2002, the Defendants' legal
counsel, Kathryn Thomas, wrote a certified letter to
Plaintiff, stating, in pertinent part, as follows:

> "You have indicated to ADQSR that you do not at
> any time intend to carry the DUNKIN DONUTS'
> breakfast sandwiches that include pork products
> such as ham, bacon or sausage. While due to
> extenuating circumstances ADQSR intends to honor
> your existing franchise agreements for the stores
> referenced above, please be advised that as a
> result of your refusal to carry the full
> breakfast sandwich product line, you are not
> eligible to relocate either of your stores or to
> otherwise expand within the ADQSR system.
> Additionally, your failure to sell these
> breakfast sandwiches means that ADQSR will not
> consider you as a candidate for renewal at either
> of the above referenced locations, and therefore,
> you should plan accordingly." (A copy of the
> letter is attached as Exhibit A)

11.  Since that date, the Defendants have repeated
their response that they would not allow Plaintiff to
expand, nor renew, either of his franchises, for the sole

reason that he would not sell pork products in violation of his race's tradition and customs.

12.  Plaintiff filed a lawsuit, *Elkhatib v. Dunkin Donuts, et al.,* No. 02 C 8131, alleging discrimination pursuant to Title 42, U.S.C. Section 1981 and 1982. (A copy of the Complaint in the prior pending action is attached as Exhibit B.)

13.  The case went through years of litigation, with the District Court, on November 12, 2004, granting summary judgment in favor of the Defendants.

14.  Plaintiff appealed to the United States Court of Appeals, Seventh Circuit. On July 3, 2007, the Court of Appeals reversed the granting of summary judgment, and found Plaintiff had made a *prima facie* case of racial discrimination, in that he had shown that the Defendants had not enforced the requirements to sell pork products against other franchisees and had renewed their franchise agreements. (A copy of the appellate court decision is attached as Exhibit C.)

15.  Defendants' action in refusing to renew the Plaintiff's franchise, on the sole basis of his refusal to sell pork products, is discriminatory in that:

> A)    Other DUNKIN DONUTS franchisees have not been required to sell pork products as a condition for remaining franchisees. (One

4

franchise in the Chicago area is actually
Kosher in observance of the Jewish religion,
and will not sell pork products.)

B)    The selling of pork products was never a
necessary condition for ELKHATIB to become a
DUNKIN DONUTS franchisee. He purchased his
franchises and has remained a franchisee
because he was not required to do so.

C)    It has never been necessary for the success
of DUNKIN DONUTS franchises, such as
Plaintiff, to sell pork products as shown by
Plaintiff's successful operation of his
DUNKIN DONUTS franchises since 1979.

16.    Title 42, U.S.C. Section 1981 provides, in

pertinent part, as follows:

"§1981.  Equal rights under the law

(a) Statement of equal rights.  All persons
within the jurisdiction of the United States
shall have the same right in every State and
Territory to make and enforce contracts, is
enjoyed by white citizens.

(b) "Make and enforce contracts" defined.  For
purposes of this section, the term "make and
enforce contracts" includes the making,
performance, modification, and termination of
contracts, and the enjoyment of all benefits,
privileges, terms, and conditions of the
contractual relationship.

(c) Protection against impairment.  The rights
protected by this section are protected against
impairment by nongovernmental discrimination
and impairment under color of State law."

17.    Title 42 U.S.C. Section 1982 provides, in

pertinent part, as follows:

"§1982.  Property rights of citizens
All citizens of the United States shall have

the same right, in every State and Territory,
as is enjoyed by white citizens thereof to
inherit, purchase, lease, sell hold, and
convey real and personal property."

18.  The Plaintiff, as an Arab, is a member of a
racial minority, and a member of a protected class, as
distinct from white citizens.

19.  The Defendants have intentionally discriminated
against Plaintiff, in refusing to renew his franchise on
the sole basis of his refusal to sell pork products.

20.  As a result of the Defendants' actions,
in discriminating against Plaintiff, as set forth above,
Plaintiff has lost, or is threatened with a loss in excess
of ONE MILLION DOLLARS ($1,000,000.00), with the threatened
loss of the opportunity to renew his franchise.

21.  Plaintiff seeks a Declaratory Judgment, pursuant
to Title 28, U.S.C. Section 2201, as the dispute over
Defendants' actions in refusing to allow Plaintiff to renew
his franchise, for the above reasons, constitute an actual
controversy.

22.  After the Court of Appeals remanded the case to
the District Court, for a trial on the merits, Plaintiff
moved for leave to file an Amended Complaint to include the
claim set forth herein. (A copy of the proposed Amended
Complaint is attached as Exhibit D.)

23.  In November 2007, the District Court denied Plaintiff leave to file an Amended Complaint, but stated that the Plaintiff could file a new complaint, and that the proceedings in the previous case, Case No. 02 C 8131, would not constitute res judicata.

24.  The Plaintiff's Westchester franchise is due to expire on April 14, 2008. It is ELKHATIB'S sole source of livelihood, and he would be faced with irreparable injury, for which he has no adequate remedy at law if the franchise is not renewed, given his great investments of time and money in the development of the franchises.

25.  As the Appellate Court has ruled that he has presented a prima facie case of discrimination, he also has shown that he is likely to succeed on the merits.

26.  The Defendants will not be injured by the entry of the relief sought as the Plaintiff has always operated his business at a profit and has made all required royalty payments to the Defendants.

27.  It is in the public interest to prohibit the discrimination against profitable franchisees, based solely on their national origin and race, as were this allowed, it would create inefficiencies in the economy, and encourage discrimination against minorities.

28.   The trial in *Elkhatib v. Dunkin Donuts*, No. 02 C 8131, has been set by the District Court to follow a criminal trial, which should have been completed prior to the filing of this action. However, the criminal trial is still proceeding, and the trial of Case No. 02 C 8131 will most probably not begin until June 2008.

29.   The Defendants' refusal to allow ELKHATIB to renew his franchise will cause irreparable harm, as stated above, for which he has no adequate remedy at law.

**WHEREFORE**, the Plaintiff, WALID ELKHATIB, prays that this Honorable Court enter an order providing as follows:

A.   That the Defendants be enjoined from the non-renewal of the Plaintiff's franchise.

B.   That the Court award $5,000,000.00 in damages.

C.   That the Plaintiff be awarded his attorney fees and costs.

D.   For any other relief that the court deems just.

> **/s/Robert Habib**
> **Robert Habib**

**ATTY. NO. 3128545**
**ROBERT HABIB**
**Attorney for Plaintiff**
**77 W. Washington Street**
**Suite 411**
**Chicago, IL 60602**
**(312) 201-1421**

**PLAINTIFF DEMANDS TRIAL BY JURY**

STATE OF ILLINOSI  )
                   )  SS:
COUNTY OF C O O K  )

## VERIFICATION

I, the undersigned, being first duly sworn, under oath does state that the statements set forth in this Instrument are true and correct,

_____
**WALID ELKHATIB**


SUBSCRIBED AND SWORN to before me

this ___ day of _March___ , 2008.

_____
N O T A R Y   P U B L I C



OFFICIAL SEAL
PETER C. NABHANI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-30-2009


Robert Habib
Attorney for PLAINTIFF.
Suite 411, 77 w.WASHINGTON
Chicago, Illinois 60602
(312) 201-1421

JUDGE DER-YEGHIAYAN

MAG. JUDGE ASHMAN



**ALLIED DOMECQ**
QUICK SERVICE RESTAURANTS

August 14, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Walid M. El Khatib                     7000 1670 0009 7273 3868
C/o Dunkin' Donuts/Baskin-Robbins
1901 South Mannheim Road
Bellwood, IL 60104

Mr. Walid M. El Khatib                     7000 1670 0009 7273 3851
c/o Dunkin' Donuts
5525 St. Charles Road
Berkley, IL 60163

     Re: Dunkin' Donuts & Baskin-Robbins, PC 331695/82374
          Located @ 1901 South Mannheim Road, Westchester, IL
        Dunkin' Donuts, PC 300285
          Located @ 5525 St. Charles Road, Berkley, IL

Dear Mr. El Khatib:

I am writing as a follow up to your previous conversations with Charles Cowgill, Director of Retail Operations for Allied Domecq QSR ("ADQSR"), regarding the requirement that ADQSR franchisees carry the full product lines for all of its brands.

You have indicated to ADQSR that you do not at any time intend to carry the Dunkin' Donuts breakfast sandwiches that include pork products such as ham, bacon or sausage. While due to extenuating circumstances ADQSR intends to honor your existing franchise agreements for the stores referenced above, please be advised that as a result of your refusal to carry the full breakfast sandwich product line, you are not eligible to relocate either of your stores or to otherwise expand within the ADQSR system. Additionally, your failure to sell these breakfast sandwiches means that ADQSR will not consider you as a candidate for renewal at either of the above referenced locations, and therefore, you should plan accordingly.

Very truly yours,

Kathryn Thomas, Legal Counsel

cc: C. Cowgill
    Legal File

ALLIED DOMECQ QSR
14 PACELLA PARK DRIVE PO BOX 317 RANDOLPH MA 02368 USA  TELEPHONE 1 781 961 4000  FACSIMILE 1 781 963 2913

**DUNKIN' DONUTS**

**TOGO'S**
BREAK SANDWICHES

**Baskin Robbins.**

Exhibit A

IN THE UNITED STATES DISTRICT COURT FILED-ED4
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION   02 NOV -8 PM 4:30

WALID ELKHATIB,                    )
                                   )        CLERK
            Plaintiff,             )    U.S. DISTRICT COURT
                                   )
                                   )
    vs.                            )    02C 8131
                                   )
DUNKIN DONUTS, INC., a             )    JUDGE NORGLE
Delaware corporation and          )
ALLIED DOMECQ                      )
                                   )    MAGISTRATE JUDGE DENLOW
            Defendant.             )
                                        NOV 1 2 2002

## COMPLAINT FOR CIVIL RIGHTS VIOLATION

   NOW COMES the plaintiff, WALID ELKHATIB, by and
through his attorney, ROBERT HABIB and complaining of the
defendant, DUNKIN DONUTS, INC., a Delaware corporation and
ALLIED DOMECQ, for a declaratory judgment that the
defendants have racially discriminated against the
plaintiff, states as follows:

### JURISDICTION

   1.   The District Court has both Federal Question
Jurisdiction, pursuant to Title 28 U.S.C. Section 1331 as
this action involves violations of Title 42, U.S.C. Section
1981 and 1982.   The Court has diversity jurisdiction,
pursuant to Title 28 U.S.C. Section 1332, as the plaintiff
is a citizen of Illinois while the defendants are Delaware
corporations, whose principal place of business is in
Massachusetts.

Exhibit B                      11

## VENUE

2.   The District Court is the proper venue as all actions complained of occurred, or are occurring in Cook County, Illinois.

## PARTIES

3.   The plaintiff, WALID ELKHATIB is a U.S. Citizen who is a member of the Arab race.

4.   The defendant, DUNKIN DONUTS, is a franchiser whose principal place of business is in Massachusetts.

5.   The defendant, ALLIED DOMECQ, is a holding company for DUNKIN DONUTS, also based in Massachusetts.

6.   WALID ELKHATIB has been a DUNKIN DONUTS franchisee continuously since 1979.

7.   Plaintiff presently has two franchises.   One is located at 5525 St. Charles Street, Berkley, Illinois.   The franchise agreement was entered into in 1995, and will expire on May 10, 2005, if it is not renewed.

8.   The second franchise is located at 1901 South Mannheim, Westchester, Illinois.   The franchise agreement was entered into in 1998 and will expire in 2008, if it is not renewed.

9.   Plaintiff, as an Arab is forbidden from dealing, buying or selling pork products, because of his race's

2

traditions and religious practices. Since 1979, plaintiff has never allowed the sale of pork products at his stores. During this time, plaintiff has spent hundreds of thousands of dollars, building, developing and maintaining his stores.

10. Dunkin Donuts' trademark business has always been its sale of coffee and donuts. While it has, since 1984 featured sale of some pork products in its breakfast items, it has never insisted on plaintiff being required to sell these items, as a condition for being a franchisee.

11. In 2002, the plaintiff was approached by DUNKIN DONUTS' Real Estate Department and asked if he wanted to relocate his Westchester franchise from 1901 South Mannheim Road to Mannheim and Roosevelt Road, a far superior location, in view of the enormous traffic through the latter intersection.

12. Plaintiff was very interested in relocating his Westchester franchise to Mannheim and Roosevelt Road, as in his opinion, based upon twenty-three (23) years of operating in this neighborhood, he would triple his sales volume.

13. On May 3, 2002, Heidner Property Management, representing the ownership of the subject property on the

3

Northwest corner of Mannheim and Roosevelt, extended a lease proposal to plaintiff, a copy of which is attached to the Complaint as Exhibit 1.

14. On May 30, 2002, Heidner Property Management and plaintiff entered into a Letter of Intent to Ground Lease for the subject premises, a copy of which is attached as Exhibit 2.

Said Letter of Intent was contingent upon DUNKIN DONUTS' approval within sixty (60) days of the execution of the Letter of Intent.

15. However, on May 22, 2002 plaintiff met with DUNKIN DONUTS' Operations Department as to the projected expansion. At this time, DUNKIN DONUTS raised the issue as to whether plaintiff would sell the pork sandwiches. Defendants were well aware that plaintiff was an Arab, and that he had refused since 1984, to sell the pork products. Confronted by plaintiff's continued refusal, defendant's representatives indicated they would consult with their legal department.

16. Plaintiff did not hear from defendants until August 14, 2002. On that date, defendant's legal counsel, KATHRYN THOMAS wrote a certified letter to plaintiff, see attached Exhibit 3 stating:

4

"You have indicated to ADQSR that you do not
at any time intend to carry the Dunkin
Donuts' breakfast sandwiches that include pork
products such as ham, bacon or sausage.  While
due to extenuating circumstances ADQSR intends
to honor your existing franchise agreements for
the stores referenced above, please be advised
that as a result of your refusal to carry the
full breakfast sandwich product line, you are
not eligible to relocate either of your stores
or to otherwise expand within the ADQSR system.
Additionally, your failure to sell these
breakfast sandwiches means that ADQSR will not
consider you as a candidate for renewal at
either of the above referenced locations, and
therefore, you should plan accordingly."

17.   Since that date, defendants have repeated their
response that they would not allow plaintiff to expand nor
renew either of his franchises, on the sole grounds that he
would not sell pork products in violation of his race's
tradition and customs.

18.   Defendants'   action   in   refusing   to   renew
plaintiff's franchises, or refusing to agree to plaintiff's
relocation to Mannheim and Roosevelt Road, on the sole
basis   of   his   refusal   to   sell   pork   products,   is
discriminating against plaintiff in that:

A)   Other Dunkin Donuts franchises have
not been required to sell pork products
as a condition for remaining a franchisee.
One franchise in the Chicago area is
actually Kosher in observance of the
Jewish religion, and will not sell pork
products;

5

B) The selling of pork products has never been a necessary condition for either becoming a Dunkin Donuts franchisee and plaintiff purchased his franchises and has remained a franchisee because he was not required to do so.

C) It has never been necessary for the success of Dunkin Donuts franchises such as plaintiffs, to sell pork products as shown by plaintiff's successful operation of his Dunkin Donuts franchises since 1979.

18. That Title 42, U.S.C. Section 1981 provides in pertinent part:

**"Section 1981. Equal rights under the law**

**(a) Statement of equal rights.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, is enjoyed by white citizens.

**(b) "Make and enforce contracts" defined.** For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) Protection against impairment.** The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

19. That Title 42 U.S.C. Section 1982 provides in pertinent part:

6

**"Section 1982. Property rights of citizens**

All citizens of the United States shall
have the same right, in every State and
Territory, as is enjoyed by white citizens
thereof to inherit, purchase, lease, sell
hold, and convey real and personal property.

20. That the plaintiff, as an Arab, is a member of a
racial minority and a member of a protected class, as
distinct from white citizens.

21. That the defendants have intentionally
discriminated against plaintiff in refusing to allow the
relocation of his franchises and further indicating that
they will not renew his franchises on the sole grounds that
he will not sell pork products.

22. That as a result of the defendants' actions, in
discriminating against plaintiff, as set forth above,
plaintiff has lost, or is threatened with the loss of FIVE
HUNDRED THOUSAND ($500,000.00) in his loss of the Mannheim
and Roosevelt Road franchise and his threatened loss of the
opportunity to renew his franchises.

23. That plaintiff seeks a Declaratory Judgment,
pursuant to Title 28, U.S.C. Section 2201 that the
defendants' actions in refusing to allow plaintiff to

7

relocate, and in its refusal to renew the franchises, on the sole grounds that he will not sell pork products, is in violation of Section 1981 and Section 1982 of the Civil Rights Acts guaranteeing him the right to contract, and to own and lease land, with all the rights of white people.

**WHEREFORE**, the plaintiff, WALID ELKHATIB, prays that this Honorable Court enter a Declaratory Judgment providing as follows:

A) That the defendants' refusal to allow plaintiff to relocate on the sole grounds of his refusal to sell pork products is in violation of Section 1981 and Section 1982.

B) That the defendants' threatened refusal to renew plaintiff's franchises on the sole grounds of his refusal to sell pork products is in violation of Section 1981 and Section 1982.

C) That plaintiff be awarded his attorney's fees and costs, pursuant to statute.

**COUNT II**

Plaintiff realleges and incorporates paragraphs 1-22 of Count I as paragraphs 1-22 of Count II.

**WHEREFORE** the plaintiff WALID ELKHATID prays that the Honorable Court enter a Judgment, against the defendant for $500.000 plus attorney fees and cost.

ROBERT HABIB

ROBERT HABIB
ATTORNEY FOR PLAINTIFF
77 W. WASHINGTON St.
SUITE 77
CHICAGO, IL 60602
(312) 201-1421
ATTORNEY #13519

Plaintiff Demands Trial By Jury.





**HEIDNER PROPERTY MANAGEMENT**
399 Wall Street • Unit H
Glendale Heights, IL 60139
Phone (630) 894-0099 • Fax (530) 894-0485

## LEASE PROPOSAL
### NEC of Roosevelt Road and Mannheim Road, Westchester, IL

1. **Basic Lease Information**

   1) **Tenant:**  Dunkin Donuts

   2) **Address of Tenant:**  4700 Gilbert Road, Suite 47, P.M.B. 300, Western Springs, Illinois 60553.

   3) **Landlord:**  Rick E. Heidner.

   4) **Premises:**  Approximately 2,500 square foot building located on approximately 27,500 square feet of land.

   5) **Lease Term:**  Ten (10) years, commencing on the date that is one hundred twenty (120) days after the Tenant accepts delivery of possession of the Premises from Landlord in the condition required by Lease.

   6) **Delivery Date:**  June 1, 2002

   7) **Basic Rent:**

   | | |
   |---|---|
   | Years 1-5 | $5,000.00/per month N.N.N. |
   | Years 6-10 | $5,750.00/per month N.N.N. |

   8) **Option:**

   | | |
   |---|---|
   | Years 11-15 | $6,500.00/per month N.N.N. |
   | Years 16-20 | $7,500.00/per month N.N.N. |

   9) **Security Deposit.**  $7,000.00

   10) **Tenant Improvements:**  Landlord to install new asphalt parking lot.

   11) **Insurance, Operating Costs and Real Estate Taxes:**  To be paid by Tenant   Landlord shall cap R.E. Taxes at $2,000 per month for Years 1-3 of the Lease.

Gene, please review and call me at the above number to discuss.  I look forward to a long and continuous relationship with you.

Sincerely.

*Bob*  5/3/02

Robert J. DeIlutri

May 14, 2002

## Revised

Mr. Robert Dellutri
Heldner Property Management
399 Wall St Unit H
Glendale Heights
IL. 60139

        RE: Letter of Intent to Ground Lease NEC Mannhiem & Roosevelt
        Westchester Il.

Dear Bob

This letter summarizes the basic terms and conditions, which Walid Elkhatib would enter into an ground lease agreement. Each of these terms is set forth more fully in the standard Ground Lease Agreement.

| | |
|---|---|
| **LESSEE:** | Walid Elkhatib, Mazen DD |
| **DEMISED PREMISES:** | A building of 2300 sq.ft. . |
| **USE:** | A Dunkin' Donuts \ Baskin Robbins and a QSR to be named later |
| **LEASE TERM:** | One (1) twenty (20) year's term with two (2) renewal options of five (5) years each. |
| **GROUND RENT:** | Years 1 - 5    $ 60,000   per annum, triple net |
| **GROUND RENT ESCALATION:** | 2.5% annual increase to be paid cumulatively in the 6th, 11th, 16th, yrs |
| **OPTION RENT:** | 2½% annual increase to be calculated on a yearly basis and paid cumulatively in the 21st year and again in the 26th year. |
| **RENT COMMENCEMENT DATE:** | When tenant is open for business or sixty (60) days after issuance of Building Permit. It is agreed that rent will commence no later than 1-1-03 or upon store opening |

**LANDLORD WORK:**   Landlord shall provide the following improvements:

1. Alta Survey no older than 6 months, A Utility plan showing existing sewer, water and storm locations, within 30 days of execution of this lease document
2. Procurement of the necessary easements from owners relative to access and parking.
3. Resurfacing the parking lot
4. Warrant that the roof be on good condition and free of leaks for the initial lease term.
5. Warrant the HVAC in good proper working condition for the initial lease term.

**LEASE SUBLET:**   Tenant shall be permitted to sublease the premise. Landlord's approval shall not be unreasonably withheld.

**CONTINGENCIES:**   The subject agreement will be contingent upon, but not limited to the following contingencies:

a) Obtaining any and all subdivision, building permits, utility easements and zoning approvals as may be necessary from any and all government authorities in order to construct and operate a Dunkin' Donuts / Baskin Robbins with drive-thru on the subject property.
b) Lessee being able to obtain any and all sign permits to erect a monument sign with building signage in accordance with its standard plans, colors and specifications.
c) Obtaining access drives to the subject property, satisfactory to Lessee.
d) d) Lessee obtaining financing to construct equip and operate a Dunkin Donuts Baskin Robbins

This proposal is specifically contingent upon approval by Dunkin' Donuts and Baskin Robbins Real Estate Approval Committee. Provided, however, such approval by Dunkin' Donuts and Baskin Robbins shall be obtained by Lessee within 60 days after last execution of this Letter of Intent.

**INS. CAM & TAXES**   To be paid by the Tenant. LL. agrees to cap the Real Estate taxes at $2000.00 per month for the first 60 months of the lease. LL also agrees to diligently pursue and contest the tax bill

**SIGN CRITERIA:**   Landlord agrees to allow Tenant to utilize its corporate graphics, colors and letter style to the maximum extent permitted by the law, municipal codes and/or ordinances. The fore going shall apply to both building signs and ground signs.

Page 3 of 3
05/14/02

This proposal is not a lease, and is intended only as the basis for the preparation of the lease by the landlord.

ACCEPTED _____   5/3/02
                                              (Date)

Sincerely,

Walid ElKhotib

Cc:   Gene L. Lincoln
      Development Manager



**ALLIED DOMECQ**
QUICK SERVICE RESTAURANTS

August 14, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Walid M. El Khatib                    7000 1670 0009 7273 3868
C/o Dunkin' Donuts/Baskin-Robbins
1901 South Mannheim Road
Bellwood, IL 60104

Mr. Walid M. El Khatib                    7000 1670 0009 7273 3851
c/o Dunkin' Donuts
5525 St. Charles Road
Berkley, IL 60163

      Re: Dunkin' Donuts & Baskin-Robbins, PC 331695/82374
           Located @ 1901 South Mannheim Road, Westchester, IL
      Dunkin' Donuts, PC 300285
           Located @ 5525 St. Charles Road, Berkley, IL

Dear Mr. El Khatib:

I am writing as a follow up to your previous conversations with Charles Cowgill, Director of Retail Operations for Allied Domecq QSR ("ADQSR"), regarding the requirement that ADQSR franchisees carry the full product lines for all of its brands.

You have indicated to ADQSR that you do not at any time intend to carry the Dunkin' Donuts breakfast sandwiches that include pork products such as ham, bacon or sausage. While due to extenuating circumstances ADQSR intends to honor your existing franchise agreements for the stores referenced above, please be advised that as a result of your refusal to carry the full breakfast sandwich product line, you are not eligible to relocate either of your stores or to otherwise expand within the ADQSR system. Additionally, your failure to sell these breakfast sandwiches means that ADQSR will not consider you as a candidate for renewal at either of the above referenced locations, and therefore, you should plan accordingly.

Very truly yours,

Kathryn Thomas, Legal Counsel

cc: C. Cowgill
    Legal File

**DUNKIN'
DONUTS**

**TOGO'S**
EAT A SANDWICH

**Baskin
Robbins**

ALLIED DOMECQ QSR

14 PACELLA PARK DRIVE PO BOX 317 RANDOLPH MA 02368 USA TELEPHONE 1 781 961 4000 FACSIMILE 1 781 963 2813

(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as req by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

WALID ELKHATIB

## DEFENDANTS

DUNKIN DONUTS, INC.,

ALLIED DOMECQ

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    COOK
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

02C 8131

JUDGE NORGLE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ROBERT HABIB
77 W. WASHINGTON
CHICAGO, IL 60602

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE DENLOW

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLA AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 810 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization A |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determin Under Equal Access to J |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff Dunkin Donuts franchisee, sues for racial dicrimination, Under Title 42 Section 1981 and 1982, for declaratory relief that Dunkin Donuts has no ri to refuse to renew his Franchise simply because he won't sell pork products.

## VII. REQUESTED IN COMPLAINT

☒ CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ 500,000

CHECK YES only if demanded in compla
JURY DEMAND: ☒ YES ☐ NO

## VIII.

This case ☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number_____, previously dismissed by Judge_____

DATE
11/8/02

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

        WALID ELKHATIB

            v.

        DUNKIN DONUTS

Case Number: **02 C 8131**

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

        WALID ELKHATIB

**JUDGE NORGLE**

**MAGISTRATE JUDGE DENLOW**

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME    ROBERT HABIB | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS   77 W. WASHINGTON | | | STREET ADDRESS | | |
| CITY/STATE/ZIP   CHICAGO, IL 60602 | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER   (312) 201-1421 | | | TELEPHONE NUMBER | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)   3128545 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☒ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |
| **(C)** | | | **(D)** | | |
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | | | TELEPHONE NUMBER | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |

DOCKETED NOV 12 2002

FILED-ED4 11:30 HA 8- AON 20 CLERK U.S. DISTRICT COURT

1-3

Westlaw.

493 F.3d 827
493 F.3d 827, 89 Empl. Prac. Dec. P 42,890
**(Cite as: 493 F.3d 827)**

H Elkhatib v. Dunkin Donuts, Inc.
C.A.7 (Ill.),2007.

United States Court of Appeals,Seventh Circuit.
Walid ELKHATIB, Plaintiff-Appellant,
v.
DUNKIN DONUTS, INC., a Delaware Corp., and
Allied Domecq, Defendants-Appellees.
**No. 04-4190.**

Argued Oct. 30, 2006.
Decided July 10, 2007.

**Background:** Arab franchisee brought civil rights action against franchisor under § 1981 alleging racial discrimination. The United States District Court for the Northern District of Illinois, Charles R. Norgle, Sr., J., 2004 WL 2600119, granted summary judgment for franchisor. Franchisee appealed.

**Holdings:** The Court of Appeals, Rovner, Circuit Judge, held that:
(1) franchisee established prima facie case that franchisor applied franchise provision, which required franchisees' to carry full line of breakfast products, in racially discriminatory manner, and
(2) fact issue existed as to whether franchisor's adverse action against franchisee was pretext for racial discrimination.

Reversed and remanded.

West Headnotes

**[1] Civil Rights 78 ⟊1422**

78 Civil Rights
    78III Federal Remedies in General
        78k1416 Weight and Sufficiency of Evidence
            78k1422 k. Other Particular Cases and Contexts. Most Cited Cases
Alleged anti-Arab statement that was so lacking in detail, including any indication as to what statement was, was too speculative to provide direct evidence in lawsuit under § 1981 that franchisor's decision regarding denial of renewal and relocation of franchises was based on franchisee's race. 42 U.S.C.A.

§ 1981.

**[2] Civil Rights 78 ⟊1417**

78 Civil Rights
    78III Federal Remedies in General
        78k1416 Weight and Sufficiency of Evidence
            78k1417 k. In General. Most Cited Cases
On a claim of racial discrimination under § 1981, direct evidence is evidence that, if believed, shows discriminatory conduct without reliance on inference or presumption, such as where there is an admission that a decision was based on the prohibited animus; that may include circumstantial evidence, but such evidence must point directly to a discriminatory reason for the employer's action. 42 U.S.C.A. § 1981.

**[3] Civil Rights 78 ⟊1041**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
        78k1041 k. Contracts, Trade, and Commercial Activity. Most Cited Cases
Arab franchisee, who refused to handle pork products, established prima facie case that franchisor applied franchise provision, which required franchisees to carry full line of breakfast products, in racially discriminatory manner in violation of § 1981, where franchisor allowed similarly-situated franchisees to carry less than full product line without consequence or any other indication that provision was material part of contract. 42 U.S.C.A. § 1981.

**[4] Civil Rights 78 ⟊1033(1)**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
        78k1030 Acts or Conduct Causing Deprivation
            78k1033 Discrimination in General
                78k1033(1) k. In General. Most Cited Cases
On a claim of racial discrimination under § 1981, the issue of whether there were similarly-situated individuals not in the protected class who were treated differently should not be applied mechanically or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inflexibly, but rather is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison; substantial similarity, not complete identity, is required. 42 U.S.C.A. § 1981.

[5] Federal Civil Procedure 170A ⟨⟩2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
Genuine issue of material fact existed as to whether franchisor's adverse action against franchisee was pretext for racial discrimination, precluding summary judgment in lawsuit under § 1981. 42 U.S.C.A. § 1981; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**\*828**Robert A. Habib (argued), Chicago, IL, for Plaintiff-Appellant.

Christopher B. Wilson, Jonathan R. Buck (argued), Perkins Coie, Chicago, IL, for Defendants-Appellees.

Before KANNE, ROVNER, and WILLIAMS, Circuit Judges.

ROVNER, Circuit Judge.
Plaintiff-Appellant Walid Elkhatib is a Palestinian Arab of the Muslim faith who is a U.S. citizen. In 1979, he purchased his first Dunkin Donuts franchise, and has continuously operated various Dunkin Donuts franchises since that time. Elkhatib attested that he chose to pursue the franchise opportunity with Dunkin Donuts in part because it would not require him to handle pork products, which he asserts is forbidden to members of the Arab race by tradition and custom. Although no pork products were served at Dunkin Donuts when Elkhatib purchased his first franchise in 1979, that situation changed in 1984 when Dunkin Donuts introduced its breakfast sandwiches, which are croissants with egg and a choice of cheese, bacon, ham or sausage. Elkhatib refused to sell the sandwiches at his store, and District Manager Jeff Zevoral did not object to that decision. In 1995, Elkhatib opened a second franchise in Berkeley, Illinois, and again his refusal to carry pork products was met with no objection from Dunkin Donuts personnel. A year later, Elkhatib began selling breakfast sandwiches without bacon, sausage or ham, at his two locations. Zevoral

facilitated those sales, supplying Elkhatib with a sign that stated "Meat Products Not Available." Zevoral also provided another plastic sign to Elkhatib advertising the breakfast sandwiches, which stated "At participating U.S. shops only [sic] Bacon, sausage or ham may not be available at all shops." In 1998, Elkhatib opened a Dunkin Donuts store in Westchester, Illinois.

Elkhatib was approached in 2002 by Gene Liguoritis, Development Manager for Dunkin Donuts, about the possibility of moving his location within Westchester to a more advantageous location at the intersection of two busy roads. Elkhatib pursued that opportunity, and entered into a Letter of Intent to Ground Lease for the new location contingent upon the approval by Dunkin Donuts. That approval was not forthcoming, and in fact, in May 2002, Elkhatib was informed that Dunkin Donuts would not agree to the relocation. Elkhatib met with Dunkin Donuts supervisors Greg Novak and Chuck Cowgill to ascertain the reason for that decision. Near the conclusion of that meeting, the issue of the breakfast sandwiches arose, and Elkhatib informed them that he would continue to sell breakfast sandwiches, but would not sell pork products because he was forbidden to handle pork. No one mentioned at that time that his objection to selling pork was fatal to his future as a franchise owner.

However, on August 12, 2002, Elkhatib received that news via a letter from Dunkin Donuts legal counsel, declaring that although his current franchise agreements would be honored, he could not relocate nor could he renew any of his franchise agreements because of his failure to carry **\*829** Dunkin Donuts' full breakfast sandwich product line. In November, 2002, Elkhatib filed a complaint against Dunkin Donuts and its parent company Allied Domecq (hereinafter "Dunkin Donuts"), alleging that the refusal to allow him to relocate or to renew his franchises based on his refusal to sell pork products constituted racial discrimination in violation of 42 U.S.C. §§ 1981 and 1982.

Dunkin Donuts sought summary judgment in the district court, arguing that Elkhatib was denied the right to relocate and renew his franchises because of his refusal to carry a full line of Dunkin Donuts products, including pork products, and not due to his race. In granting that motion, the court on its own construed Elkhatib's claim to be one of religious

discrimination rather than racial discrimination, based on the court's determination that the restrictions on handling pork are associated with religion rather than race. Neither party argues for affirming on that basis. Instead, Dunkin Donuts argues that the district court properly held in the alternative that Elkhatib had failed to meet his burden in demonstrating racial discrimination. We review *de novo* the district court's grant of summary judgment, construing all facts and all reasonable inferences in the light most favorable to Elkhatib. *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060 (7th Cir.2003). We will affirm only if the evidence shows that there is no genuine issue as to any material fact and that Dunkin Donuts is entitled to judgment as a matter of law. *Id.*

The complaint was filed under 42 U.S.C. §§ 1981 & 1982, which provide that "all persons ... shall have the same right ... to make and enforce contracts, as is enjoyed by white citizens," that those rights are "protected against impairment by nongovernmental discrimination," and that all citizens "shall have the same right ... as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Those provisions are inapplicable to religious discrimination, but protect against racial discrimination.

We note initially that the Supreme Court has recognized that the § 1981 protection against racial discrimination applies to discrimination based on a person's status as an Arab. *Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Elkhatib may prove discrimination under § 1981 either through direct evidence, or through the indirect burden-shifting method discussed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403-04 (7th Cir.2007); *Cerutti,* 349 F.3d at 1060-61.

[1][2] Elkhatib has presented little in the way of direct evidence relating to his race. Direct evidence is evidence that, if believed, shows discriminatory conduct by the employer without reliance on inference or presumption, such as where there is an admission by an employer that the decision was based on the prohibited animus. *Cerutti,* 349 F.3d at 1061. That may include circumstantial evidence, but such evidence " 'must point directly to a discriminatory

reason for the employer's action.' " *Id.* at 1061, *quoting Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir.2003). Elkhatib provides only a statement from his store manager that in November-December 2001, she overheard Greg Novak make what she regarded as an anti-Arab statement at a meeting of franchisees and their managers. With Elkhatib's permission, she reported the comment through the complaint mechanism supplied by Dunkin Donuts, and was told that Novak's boss, Cowgill, would stop by the store to apologize. Cowgill did visit the store that **830 week, but did not apologize, and the store manager reported that as well. That incident is potentially relevant in determining the motive for the decision not to renew the franchise agreements, although it arguably indicates retaliatory discrimination rather than racial discrimination. *See Humphries,* 474 F.3d at 398 (recognizing that the protections of § 1981 also apply to claims of retaliation). It is so lacking in detail, however, including any indication as to what the statement was, that any thoughts as to its potential relevance are purely speculative. For purposes of this motion, it is enough to note that it does not provide direct evidence that the decision regarding the renewal and relocation of the franchises was based on Elkhatib's race.

In the absence of such direct evidence, he may survive summary judgment through the indirect burden-shifting method of *McDonnell Douglas.* Under that method, he must first establish a *prima facie* case of discrimination by producing evidence which would allow a jury to find that: (1) he belongs to a protected class; (2) he met Dunkin Donuts' legitimate expectations with regard to the franchise agreement; (3) he suffered an adverse action; and (4) similarly-situated non-protected individuals were treated more favorably. Once Elkhatib meets that burden, Dunkin Donuts must provide a legitimate, non-discriminatory reason for its actions. The burden would then shift back to Elkhatib to demonstrate that Dunkin Donuts' actions were merely pretextual.

[3] There is no dispute that Elkhatib belongs to a protected class, nor is there any question that he suffered an adverse action. Dunkin Donuts argues, however, that Elkhatib has failed to establish that he can perform his obligations under the contract because he is unwilling to serve the full line of products, and that there are no similarly-situated non-protected individuals treated more favorably.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

493 F.3d 827                                                                                                    Page 4
493 F.3d 827, 89 Empl. Prac. Dec. P 42,890
**(Cite as: 493 F.3d 827)**

For its first argument, Dunkin Donuts points to the franchise agreement which requires all franchisees to carry Dunkin Donuts' full food product line. Elkhatib's refusal to carry pork products violates that provision, and according to Dunkin Donuts, establishes that he cannot or will not perform his obligations under the contract. Elkhatib responds that Dunkin Donuts has never required its franchisees to carry the full product line despite that language, and in fact that it affirmatively assisted franchisees in carrying less than the full product line by providing signs for stores declaring: "No Meat Products Available."

Dunkin Donuts' decision in the past not to require compliance with that provision would not prevent it from enforcing it in future franchise agreements, as would be the case if Elkhatib relocated or renewed his franchise agreements. Nevertheless, if Dunkin Donuts continued to allow franchisees to carry less than its full product line without consequence or any other indication that the provision was a material part of the contract, then it could hardly point to that neglected provision to defeat a claim of racial discrimination if it chose to enforce it against only certain racial minorities.

In that manner, this is similar to a line of cases in the employment context in which violations of legitimate employer expectations were met with disparate treatment based on race. For instance, in *Curry v. Menard, Inc.,* 270 F.3d 473 (7th Cir.2001), an African-American cashier acknowledged that she had violated the store's progressive disciplinary policy which provided for termination for the three cash discrepancies in her cashier drawer. She maintained, however, that two non-African-American cashiers with **\*831** similar violations were not terminated. The issue, then was whether the employer applied its legitimate employment expectations in a discriminatory manner. We held that "it makes little sense in this context to determine whether she was meeting Menard's legitimate expectations. Rather, Menard's argument is more appropriately considered in our analysis of pretext." *Id.* at 478. We have reiterated that conclusion in subsequent cases, recognizing that " '[w]hen a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner (i.e., applied expectations to

similarly situated ... younger employees in a more favorable manner), the second and fourth prongs merge-allowing plaintiffs to stave off summary judgment for the time being, and proceed to the pretext inquiry.' " *Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 329 (7th Cir.2002); *Cerutti,* 349 F.3d at 1064 n. 8 (quoting *Peele* ).

That same scenario is present here. Elkhatib does not deny that his failure to carry the full line of breakfast products is inconsistent with the requirement in the franchise agreement. He argues, however, that Dunkin Donuts applied that franchise provision in a discriminatory manner. In that context the second and fourth prongs merge in the inquiry. That leads to the issue of whether there were similarly-situated individuals not in the protected class who were treated differently. Of the three franchises in the Chicago area who refused to carry the full line of breakfast sandwiches, none were owned by an Arab. Dunkin Donuts nevertheless argues that they are not similarly-situated because their reasons for refusing to carry the sandwiches were different from Elkhatib's. One of those franchises did not carry breakfast sandwiches at all because its lease prohibited it from serving sandwiches. Another did not carry any breakfast sandwiches because it ostensibly lacked space for the toaster oven or microwave needed to do so. Finally, the third franchise did not carry any pork products because it sought to meet the demand in the area for a kosher establishment.

[4] The level of similarity that Dunkin Donuts would require in order for the *prima facie* case to be met is unworkable and inconsistent with *McDonnell Douglas.* The similarly-situated requirement should not be applied mechanically or inflexibly, but rather is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison. *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404-05 (7th Cir.2007). Substantial similarity, not complete identity, is required. *Id.* at 405. In fact, we cautioned in *Humphries* against overly technical or rigid interpretations of this requirement:
It is important not to lose sight of the common-sense aspect of this inquiry. It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees-distinctions can always be found in particular job duties or performance histories or the nature of the alleged transactions ... but the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

493 F.3d 827                                                                                          Page 5
493 F.3d 827, 89 Empl. Prac. Dec. P 42,890
**(Cite as: 493 F.3d 827)**

fundamental issue remains whether such distinctions are so significant that they render the comparison effectively useless. In other words, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation-recall that the plaintiff need not *prove* anything at this stage.

[citations omitted; italics in original] *Id.*

The franchises identified as comparators were identical in all relevant respects in **\*832** that they all failed to carry part or all of the breakfast line of products despite the requirement in their franchise agreement that they do so. That franchise provision is absolute in its terms, and does not indicate that exceptions would be made for certain reasons and not others. Therefore Dunkin Donuts' argument that their reasons for failing to carry the full product line were different than Elkhatib's is unavailing.

In fact, for at least two of the franchises, the problem arguably could have been resolved if it truly was a concern of Dunkin Donuts. The franchise with the lease prohibition could have relocated to a location without that restriction. Dunkin Donuts did not require that action as a condition of renewing the franchise, and in fact allowed the owner to renew the lease at that location without threat of losing the franchise after the time that it informed Elkhatib that his failure to carry the sandwiches would result in the nonrenewal of his franchise. The original lease issued in 1983 contained the restriction on the sale of sandwiches. In 2003, after the letter was sent to Elkhatib informing him that his franchise would not be renewed for failure to carry meat sandwiches, Dunkin Donuts entered into an agreement extending the lease on that store for an additional 10 years, with no modification of the provision banning the sale of sandwiches.

Similarly, Elkhatib and a co-worker visited the store with the space limitations and attested that the store had ample room for the equipment needed to serve breakfast sandwiches, but chose to use that space to display multiple shelves of coffee instead. The conversion of that space was not required of it by Dunkin Donuts, and it was not threatened with nonrenewal. Moreover, even if Elkhatib were wrong

in that assessment, we would not assume that on summary judgment, and it remains that Dunkin Donuts did not require that franchise to either modify its store or relocate in order to maintain the franchise. Finally, although Dunkin Donuts asserts that the third franchise did not carry pork in acquiescence to customer preferences, it provided no evidence to that effect. In any case, there is no meaningful distinction for purposes of the similarly-situated inquiry between the franchises that refused to carry breakfast sandwiches because of lease and space issues, and Elkhatib.

[5] Because Elkhatib has demonstrated a *prima facie* case, Dunkin Donuts must respond with a legitimate nondiscriminatory reason for its actions. Dunkin Donuts points to the franchise provision requiring the full line of products as its non-discriminatory reason. There is enough evidence in the record, however, demonstrating that the reason is pretextual, for Elkhatib to survive summary judgment.

As set forth above, there is significant evidence that the carrying of breakfast sandwiches was not an issue of importance to Dunkin Donuts. It allowed other franchises in the area to refuse to carry any breakfast sandwiches at all, when merely relocating the stores, or in one case merely rearranging the displays, would have allowed them to carry the full line. In contrast, Elkhatib carried the breakfast sandwiches with the exception of the meat products. That was apparently so common that Dunkin Donuts supplied signs for such franchises declaring "Meat Products Not Available." Moreover, despite the failure of Elkhatib to carry pork products for nearly 20 years, his stores received positive reviews and the failure to carry such products was never an issue.

That it was not of importance is strengthened by evidence that breakfast sandwiches accounted for only approximately 4% of sales at all Dunkin Donuts **\*833** stores. As was mentioned, unlike the other franchises identified by Dunkin Donuts, Elkhatib carried breakfast sandwiches but did not carry the pork products, so part of that 4% would presumably still be realized in his store. In any case, there is significant evidence that the carrying of breakfast sandwiches generally, and the carrying of meat products specifically, was not a factor that was important to Dunkin Donuts in the franchise decisions, and there is no evidence that there was any change in corporate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

493 F.3d 827, 89 Empl. Prac. Dec. P 42,890
**(Cite as: 493 F.3d 827)**

policy, or even regional policy, on the matter. In fact, the franchise that failed to carry them because of lease restrictions was allowed to renew that lease, and maintain its franchise, after the decision was made to deny renewal of Elkhatib's franchise. The evidence was sufficient to allow a jury to find pretext, and therefore the district court improperly granted summary judgment. The decision of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.

C.A.7 (Ill.),2007.
Elkhatib v. Dunkin Donuts, Inc.
493 F.3d 827, 89 Empl. Prac. Dec. P 42,890

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

08CV1931   J. N.

JUDGE DER-YEGHIAYAN

MAG. JUDGE ASHMAN

| | | |
|---|---|---|
| WALID ELKHATIB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO.  02 C 8131 |
| | ) | |
| DUNKIN DONUTS, INC., a | ) | Judge Norgle |
| Delaware corporation and | ) | Magistrate Judge Denlow |
| ALLIED DOMECQ | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

**NOW COMES** the plaintiff, WALID ELKHATIB, by and

through his attorney, ROBERT HABIB and complaining of the

defendant, DUNKIN DONUTS, INC., a Delaware corporation and

ALLIED DOMECQ, for civil rights violations, states as

follows:

**JURISDICTION**

1.  The District Court has both Federal Question

Jurisdiction, pursuant to Title 28 U.S.C. Section 1331 as

this action involves violations of Title 42, U.S.C. Section

1981 and 1982.  The Court has diversity jurisdiction,

pursuant to Title 28 U.S.C. Section 1332, as the plaintiff

is a citizen of Illinois while the defendants are Delaware

corporations, whose principal place of business is

Massachusetts.

Exhibit D

**VENUE**

2.  The District Court is the proper venue as all actions complained of occurred, or are occurring in Cook County, Illinois.

**PARTIES**

3.  The plaintiff, WALID ELKHATIB is a U.S. Citizen who is a member of the Arab race.

4.  The defendant, DUNKIN DONUTS, is a franchisor whose principal place of business is in Massachusetts.

5.  The defendant, ALLIED DOMECQ, is a holding company for DUNKIN DONUTS, also based in Massachusetts.

6.  WALID ELKHATIB has been a DUNKIN DONUTS franchisee continuously since 1979.

7.  Plaintiff in 2002 had two franchises.  One was located at 5525 St. Charles Street, Berkley, Illinois.  The franchise agreement was entered into in 1995, and expired on May 10, 2005.

8.  The second franchise is located at 1901 South Mannheim, Westchester, Illinois.  The franchise agreement was entered into in 1998 and will expire in April 2008, if it is not renewed.

9.  Plaintiff, as an Arab is forbidden from dealing, buying, or selling pork products, because of his race's traditions and religious practices.  Since 1979, plaintiff

has never allowed the sale of pork products at his stores.
During this time, plaintiff has spent hundreds of thousands
of dollars, building, developing and maintaining his
stores.

10.  Dunkin Donuts' trademark business has always been
its sale of coffee and donuts.  While it has, since 1984
featured sale of some pork products in its breakfast items,
it has never insisted on plaintiff being required to sell
these items, as a condition for being a franchisee.

11.  In 2002, the plaintiff was approached by DUNKIN
DONUTS' Real Estate Department and asked if he wanted to
relocate his Westchester franchise from 1901 South Mannheim
Road to Mannheim and Roosevelt Road, a far superior
location, in view of the enormous traffic through the
latter intersection.

12.  Plaintiff was very interested in relocating his
Westchester franchise to Mannheim and Roosevelt Road, as in
his opinion, based upon twenty-three (23) years of
operating in this neighborhood, he would triple his sales
volume.

13.  On May 3, 2002, Heidner Property Management,
representing the ownership of the subject property on the
Northwest corner of Mannheim and Roosevelt, extended a

lease proposal to plaintiff, a copy of which is attached to the Complaint as Exhibit 1.

14.  On May 30, 2002, Heidner Property Management and plaintiff entered into a Letter of Intent to Ground Lease for the subject premises, a copy of which is attached on Exhibit 2.

Said Letter of Intent was contingent upon DUNKIN DONUTS' approval within sixty (60) days of the execution of the Letter of Intent.

15.  However, on May 22, 2002 plaintiff met with DUNKIN DONUTS' Operations Department as to the projected expansion.  At this time, DUNKIN DONUTS raised the issue as to whether plaintiff would sell the pork sandwiches. Defendants were well aware that plaintiff was an Arab, and that he had refused since 1984, to sell the pork products. Confronted by plaintiff's continued refusal, defendant's representatives indicated they would consult with their legal department.

16.  Plaintiff did not hear from defendants until August 14, 2002.  On that date, defendant's legal counsel, KATHRYN THOMAS wrote a certified letter to plaintiff, stating:

> "You have indicated to ADQSR that you do not at any time intend to carry the Dunkin Donuts' breakfast sandwiches that include pork

products such as ham, bacon or sausage.  While
due to extenuating circumstances ADQSR intends
to honor your existing franchise agreements for
the stores referenced above, please be advised
that as a result of your refusal to carry the
full breakfast sandwich product line, you are
not eligible to relocate either of your stores
or to otherwise expand within the ADQSR system.
Additionally, your failure to sell these
breakfast sandwiches means that ADQSR will not
consider you as a candidate for renewal at
either of the above referenced locations, and
therefore, you should plan accordingly."

17.  Since that date, defendants have repeated their
response that they would not allow plaintiff to expand nor
renew either of his franchises, on the sole grounds that he
would not sell pork products in violation of his race's
tradition and customs.

18.  Defendants' action in refusing to renew
plaintiff's franchises, or refusing to agree to plaintiff's
relocation to Mannheim and Roosevelt Road, on the sole
basis of his refusal to sell pork products, is
discriminating against plaintiff in that:

A)   Other Dunkin Donuts franchises have
     not been required to sell pork products
     as a condition for remaining a franchisee.
     One franchise in the Chicago area is
     actually Kosher in observance of the
     Jewish religion, and will not sell pork
     products;

B)   The selling of pork products has never
     been a necessary condition for either
     becoming a Dunkin Donuts franchisee
     and plaintiff purchased his franchises
     and has remained a franchisee because he

5

was not required to do so.

C)   It has never been necessary for the
     success of Dunkin Donuts francises
      such as plaintiff, to sell pork products
     as shown by plaintiff's successful
     operation of his Dunkin Donuts franchises
     since 1979.

19.   That Title 42, U.S.C. Section 1981 provides in

pertinent part:

**"Section 1981.   Equal rights under the law**

**(a)   Statement of equal rights.**   All persons
within the jurisdiction of the United States
shall have the same right in every State and
Territory to make and enforce contracts, is
enjoyed by white citizens.

**(b)   "Make and enforce contracts" defined.**   For
purposes of this section, the term "make and
enforce contracts" includes the making,
performance, modification, and termination of
contracts, and the enjoyment of all benefits,
privileges, terms, and conditions of the
contractual relationship.

**(c)   Protection against impairment.**   The rights
protected by this section are protected against
impairment by nongovernmental discrimination
and impairment under color of State law."

20.   That Title 42 U.S.C. Section 1982 provides in

pertinent part:

**"Section 1982.   Property rights of citizens**

All citizens of the United States shall
have the same right, in every State and
Territory, as is enjoyed by white citizens
thereof to inherit, purchase, lease, sell
hold, and convey real and personal property.

21.  That the plaintiff, as an Arab, is a member of a racial minority and a member of a protected class, as

distinct from white citizens.

22.  That the defendants have intentionally discriminated against plaintiff in refusing to allow the relocation of his franchises and refusing to renew his franchises on the sole grounds that he will not sell pork products.

23.  That as a result of the defendants' actions in discriminating against plaintiff as set forth above, plaintiff has incurred the following damages, totaling FIVE MILLION AND NO/100'S DOLLARS ($5,000,000.00):

      A) The lost business plaintiff would have received if he had been allowed to relocate the Westchester franchise to Mannheim and Roosevelt;

      B) The lost income plaintiff suffered when the defendants refused to renew the Berkeley franchise in 2005;

      C) The lost income plaintiff faces if he is not allowed to renew his current Westchester franchise, due to expire in April 2008.

24.  Furthermore, plaintiff has suffered emotional anguish and humiliation, and mental suffering as a result of the defendants' discriminatory acts, all to the amount of ONE MILLION AND NO/100'S DOLLARS ($1,000,000.00).

25. That plaintiff seeks a Declaratory Judgment, pursuant to Title 28, U.S.C. Section 2201 that the defendants' actions in refusing to allow plaintiff to relocate, and in its refusal to renew the franchises, on the sole grounds that he will not sell pork products, is in violation of Section 1981 and Section 1982 of the Civil Rights Acts guaranteeing him the right to contract, and to own and lease land with all the rights of white people.

**WHEREFORE,** the plaintiff, WALID ELKHATIB, prays that this Honorable Court enter a Declaratory Judgment providing as follows:

A) That the defendants' refusal to allow plaintiff to relocate on the sole grounds of his refusal to sell pork products is in violation of Section 1981 and Section 1982.

B) That the defendants' refusal to renew plaintiff's franchises on the sole grounds of his refusal to sell pork products is in violation of Section 1981 and Section 1982.

C) That plaintiff be awarded his attorney's fees and costs, pursuant to statute.

## COUNT II

Plaintiff realleges and incorporates paragraphs 1 through 24 of Count I as paragraphs 1 through 24 of Count II.

8

**WHEREFORE,** the plaintiff, WALID ELKHATIB prays that the Honorable Court enter a Judgment, against the defendants

for SIX MILLION AND NO/100'S DOLLARS ($6,000,000.00), plus attorney's fees and costs.

_____
ROBERT HABIB

**PLAINTIFF DEMANDS TRIAL BY JURY**

ROBERT HABIB
ATTORNEY FOR PLAINTIFF
77 West Washington
Suite 411
Chicago, Illinois   60602
(312) 201-1421
Attorney No. 3128545